UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SHERRY HOLLIS** § § § | |
| **Plaintiff,** § § | |
| v. § | **CIVIL ACTION NO. 4:06-cv-3691** |
| § | |
| **LUBRIZOL CORPORATION LONG TERM DISABILITY PLAN** § § § | |
| **Defendant.** § § § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff's and Defendant's Cross Motions for Summary Judgment. For the reasons set forth below, Plaintiff's Motion, Docket No. 12, is **DENIED**. Defendant's Motion, Docket No. 11, is **GRANTED**.

### I.  BACKGROUND

Plaintiff Sherry Hollis brought this lawsuit asserting claims for wrongful denial of benefits under the Employment Retirement Income Security Act (ERISA). 29 U.S.C. §§ 1132. Plaintiff seeks to secure long term disability benefits to which she claims she is entitled under the Lubrizol Corporation Long Term Disability Plan (LTD Plan). Plaintiff was covered under the policy by virtue of her employment as an administrative assistant with Lubrizol Corporation.

Plaintiff suffers from a number of disabling conditions including failed back syndrome and major depressive disorder. As a result of these impairments, Plaintiff left her employment on January 8, 2004. On January 15, 2004, Defendant determined that Plaintiff was totally disabled from her usual occupation and approved long-term disability benefits (LTD benefits)

1

retroactive to January 12, 2004. In the letter approving her application, Defendant informed Plaintiff that the LTD benefits "will continue for up to 18 months as long as you remain disabled from your usual occupation." (Pl's Mot. Summ. Judg. Ex. A.) The letter clarified, however: "If you are still eligible for LTD benefits on July 12, 2005, it will be necessary for you to have been awarded Social Security Disability Income (SSDI) to continue to qualify for LTD benefits." (*Id.*)

The requirement that Plaintiff secure an award of SSDI benefits within eighteen months was set forth in the Thirteenth Amendment to the LTD Plan, which amended Section 1.2(n) to read:

> After the Employee has incurred a total of 18 months of Total Disability, he will be considered Totally Disabled only if he: (i) remains unable to perform the essential functions of any Reasonable Occupation, and (ii) continues to be "disabled," as determined by the Social Security Administration, such determination having initially been made on or before the completion of such 18 month period.

(Thirteenth Amendment to the LTD Plan, effective October 1, 2003.)[1]

Brenda Wright, a Lubrizol Human Resources Specialist, also informed Ms. Hollis that she would not receive LTD benefits unless she was approved for SSDI benefits within eighteen months. (Pl's Mot. Summ. Judg. Ex. A at 3.) Ms. Wright also provided Ms. Hollis with a document entitled "Social Security Disability Income" that states: "After 18 months on LTD, you will be considered totally disabled only if you are unable to work at any reasonable occupation for compensation or profit which equals at least 60% of your basic earnings and have

---

[1] According to Defendant, all Lubrizol employees were informed of the change to the LTD Plan in October 2003 in the Annual Enrollment *Benefits Beacon*. (Pl's Mot. Summ. Judg. Ex. A at 5.) The *Benefits Beacon* newsletter states in a highlighted box graphic: "Any employee going on LTD on or after October 1, 2003 must be approved for Social Security Disability Income within 18 months of their LTD start date or they will cease being eligible for benefits." (Def's Mot. Summ. Judg. Ex. A, Tab 3 at LUB0016.) The Summary Plan Description, which was not printed until after Ms. Hollis applied for LTD benefits, similarly provides: "After 18 months of long term disability, you will be considered totally disabled only if you are unable to work at any reasonable occupation for compensation or profit, which equals at least 60% of your basic earnings and have been approved for Social Security Disability Income." (SPD, Def's Mot. Summ. Judg. Ex. A, Tab 2 at LUB0158.)

2

been approved for Social Security Disability Income. If these conditions are not met, your benefits and employment will cease." (Aff. Brenda Wright; Def.'s Mot. Summ. Judg. Ex. C, Tab. 1 (emphasis in original).)

Plaintiff filed for SSDI benefits on January 21, 2004. Plaintiff was represented by an attorney at all stages of the social security process.[2] The Social Security Administration (SSA) denied her application initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge. On March 23, 2005, Plaintiff informed the LTD Plan's Disability Administrator, Suzanne Suva, that she was concerned that the SSA would not issue a decision on her claim until after the 18-month cut-off date of July 12, 2005. Ms. Suva responded that Plaintiff "must have been awarded SSDI by July 12, 2005" to remain on LTD past that date and that Lubrizol was entitled to overpayment monies if she were to be awarded a retroactive award by the SSA. (Pl's Mot. Summ. Judg. Ex. A at 7.) Ms. Suva informed Plaintiff that if her employment terminated on July 12, 2005 (presumably because she had not been awarded SSDI benefits by that date), Lubrizol would not pursue the LTD overpayment if she received a retroactive award. (*Id.*)

The SSA did not issue a final decision awarding Plaintiff SSDI benefits prior to July 12, 2005, and the LTD Plan administrator cancelled Plaintiff's LTD benefits. Ms. Hollis appealed the decision, and the administrator upheld the decision on July 15, 2005. The SSA set a hearing on Ms. Hollis' application for SSDI benefits for August 30, 2005, and on November 16, 2005, the Administrative Law Judge issued a fully favorable decision, awarding Ms. Hollis SSDI benefits retroactive to January 12, 2004.

## II. ANALYSIS

---

[2] Lubrizol contracts with Allsup, Inc. to provide assistance to employees in obtaining SSDI benefits; the assistance is provided at no cost to the employee. Ms. Hollis did not utilize Allsup's services.

3

Defendant contends that the administrator did not abuse its discretion in determining the facts underlying Plaintiff's claim or in its construction of the terms of the LTD Plan. Plaintiff counters the administrator's construction of the provision was legally incorrect or constituted an abuse of discretion because the Plan's language requiring an "initial" determination by the SSA within eighteen months is ambiguous and should be construed against Lubrizol, the drafter of the LTD Plan. Plaintiff also argues that the LTD Plan requirement that a participant receive a SSDI benefit award within eighteen months inherently violates ERISA. Defendants respond that Plaintiffs cannot maintain such a cause of action as a matter of law.

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Cross motions for summary judgment do not alter the basic Rule 56 standard; instead the Court must determine whether either of the parties deserves judgment on the facts that are not disputed.

### B.     Abuse of Discretion

If an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan,[3] the Court reviews the administrator's factual determinations and construction of plan terms for abuse of discretion. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 540-41 (5th Cir. 2007). "Abuse of discretion is synonymous with the arbitrary and capricious standard." *Wade*, 493 F.3d at 540; *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 298 (5th Cir. 1999). Where there is evidence that the administrator acted under a conflict of interest, the Court uses a "sliding scale" standard of review. *Wade*, 493 F.3d at 538. The standard of review remains abuse of discretion, but less deference is given to the administrator "in proportion to the evidence of conflict." *Id.* Where, as in this case, the only evidence of conflict is the fact that the Defendant is both the sponsor and the administrator of the Plan, the Court need not depart significantly from the basic deferential standard of review. *See, e.g., Lain v. UNUM Life. Ins. Co. of Am.*, 279 F.3d 337, 343 (5th Cir.2002) (quoting *Vega*, 188 F.3d at 301) ("When a minimal basis for a conflict is established, we review the decision with 'only a modicum less deference than we otherwise would.'")).

### C.     Administrator's Construction of the LTD Plan Terms

---

[3] Parties do not dispute that the Plan gave Lubrizol discretion to determine eligibility for benefits and to construe the terms of the plan. (*See* LTD Plan, Section 7.1-7.3.)

5

Parties do not dispute that as of July 12, 2005, the SSA had not determined Plaintiff to be disabled. Parties strongly disagree, however, as to whether the LTD Plan administrator correctly construed the terms of Section 1.2(n) of the LTD Plan.

The Fifth Circuit has developed a two-step procedure for determining whether an administrator's interpretation of a plan provision constitutes an abuse of discretion. The Court first must determine whether the administrator's interpretation of the term was legally correct. *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004). If the administrator's interpretation was not legally correct, the court then decides, in the second step, whether the decision was an abuse of discretion. *Id.* at 207.

### 1. The Administrator's Interpretation Was Legally Correct

To determine whether the interpretation was legally correct, the court must consider: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Ellis*, 394 F.3d at 270 (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637-38 (5th Cir. 1992), *modified*, 979 F.2d 1013 (5th Cir. 1992)). Whether the interpretation is consistent with a fair reading of the plan is the most important factor. *Gosselink v. AT&T, Inc.*, 272 F.3d 722, 727 (5th Cir. 2001). Applying the three *Wildbur* factors, the Court finds that Defendant's interpretation of Section 1.2(n) was legally correct.

The first factor supports a finding that the administrator's interpretation was legally correct. The undisputed evidence in the summary judgment record shows that the administrator has consistently interpreted this provision to require that a claimant be awarded SSDI benefits within eighteen months in order to continue to be eligible to receive LTD benefits. Eight persons

other than Plaintiff who were not determined to be disabled by the SSA within eighteen months were found ineligible for LTD benefits by the administrator. (Tercek Aff. ¶12.) There is no evidence that the administrator has ever allowed a participant to continue to receive LTD benefits without being awarded SSDI benefits within the requisite eighteen month time period.

The third factor is also consistent with a finding that the interpretation was legally correct. Plaintiff does not contest that unanticipated costs would result from an interpretation of the plan allowing a participant to remain eligible for LTD benefits as long as the SSA made an initial determination that a claimant was not eligible for SSDI benefits within eighteen months.

The second and most important factor also leads to the conclusion that the administrator's decision was legally correct. After considering the relevant plan language, *see Gosselink*, 272 F.3d at 727, the Court finds that the administrator's interpretation of Section 1.2(n) is consistent with a fair reading of the plan. Plaintiff argues the Court must construe Section 1.2(n) against the Plan under the doctrine of *contra proferentem*. Other circuits have "rejected contra proferentem in cases where the plan administrator retains discretion and where we review only to consider whether the administrator abused discretion," but apply the doctrine where review is de novo. *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1253-54 (10th Cir. 2007). The Fifth Circuit has held that *contra proferentem* may be used to construe an ambiguous provision when determining whether the administrator's interpretation of a plan provision was legally correct. *See, e.g., Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, 642 (5th Cir. 1999) ("[T]his Court uses a unique two-step approach to apply the abuse of discretion standard, and contra proferentem may properly be used under the first step."); *see also Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997) ("Appellants argue that the Plans contain ambiguous terms that should be construed against Appellees under the doctrine of contra

7

proferentem. This doctrine . . . has been held to apply to insurance contracts covered by ERISA." (citing *Ramsey v. Colonial Life Ins. Co.*, 12 F.3d 472, 479 (5th Cir.1994)); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991) (construing ambiguity in summary plan description against the drafter). Defendants point out, however, that other panels have recently reached a seemingly conflicting conclusion, finding that administrators with discretionary authority to interpret plan provisions are empowered to resolve any ambiguity in the provision. *See High v. E-Systems, Inc.*, 459 F.3d 573, 578 (5th Cir. 2006) ("[B]y giving MetLife complete discretion to interpret the plans, if there had been an ambiguity, MetLife was empowered to resolve it, exercising 'interpretive discretion.'"); *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 482 (5th Cir. 2003) ("The remedy for such an ambiguity in a plan's language is not the compelled inclusion of all employees who arguably fit within its scope, but rather, the exercise of interpretive discretion by a duly empowered administrator."). The Court need not address this conflict.[4] The doctrine of *contra proferentem* would only be applicable if the language in Section 1.2(n) were ambiguous and capable of being construed in the way that Plaintiff alleges. The Court finds that it is not.

Section 1.2(n) provides that an employee will only be considered Totally Disabled for purposes of the Plan if he is unable to perform the functions of any reasonable occupation and "continues to be 'disabled,' as determined by the Social Security Administration, such determination having initially been made on or before the completion of such 18 month period." Plaintiff maintains that because the plan includes the word "initially," the provision should be construed to mean that a claimant need only apply for SSDI benefits and receive some

---

[4] Contrary to Defendant's argument that the Court should follow the most recent decisions, the Fifth Circuit has held that "the earliest of conflicting panel decisions controls." *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 542 (5th Cir. 2007) (citing *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 410 (5th Cir. 2006).

8

determination by the SSA within eighteen months. According to Plaintiff, therefore, an initial finding by the SSA of "not disabled" should be sufficient to meet the requirements of Section 1.2(n). The Court is troubled by the seemingly superfluous use of the word "initially." However, "uncertainty or lack of clarity in the language chosen by the parties" does not make a term plan ambiguous. *Weir*, 123 F.3d at 286. The phrase "such determination" can only refer back to the beginning of the sentence, which requires a determination by the SSA that the claimant continues to be disabled. An initial determination by the SSA that the claimant was *not* disabled could not be considered such a determination. The language of Section 1.2(n) is not, therefore, open to the construction advanced by Plaintiff. Instead, the administrator's construction of the provision is consistent with a fair reading of the plan.

### 2. The Administrator's Interpretation Did Not Constitute an Abuse of Discretion

If the administrator's interpretation is legally correct, the Court need not consider whether the interpretation was an abuse of discretion. *Ellis*, 394 F.3d at 207 (citing *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 608 (5th Cir. 1998) ("A determination that a plan administrator's interpretation is legally correct pretermits the possibility of abuse of discretion.")). Even assuming, *arguendo*, that the administrator's interpretation of the plan provision was legally incorrect, the Court would not find that the administrator abused its discretion. To determine whether an administrator's legally incorrect construction constituted an abuse of discretion, the Court considers: "(1) the internal consistency of the plan under the fiduciary's interpretation; (2) any appropriate regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of lack of good faith." *Ellis*, 394 F.3d at 270, n.23.

9

The plan is internally consistent under the administrator's interpretation. There is no indication that the administrator's interpretation of Section 1.2(n) conflicts with any other provision of the Plan. *See Kennedy v. Electricians Pension Plan, IBEW No. 995*, 954 F.2d 1116, 1124 (5th Cir. 1992). The interpretation is consistent with the plan's requirement that an employee must make a prompt application for SSDI benefits once the employee's application for benefits is approved. (Tercek Aff. ¶8.; Seventh Amendment to LTD Plan, Effective January 1, 2002, ¶3 (amending Section 5.2 to require an employee to submit proof to the company of an application for Social Security Benefits within 30 days of commencement of LTD benefits).) It is also consistent with the amended Section 4.3 of the plan. Section 4.3 gives employees who had received more than eighteen months of LTD before the effective date of the Thirteenth Amendment until October 1, 2005 "to comply with the Social Security Disability Income (SSDI) requirement" and states that "[o]utpatient assistance will be made available to Employees who do not *receive* SSDI as of that date." (Thirteenth Amendment to LTD Plan, effective October 1, 2003, ¶ 2 (emphasis added).) Finally, the interpretation is consistent with all other documents provided by the Plan including the Summary Plan Description, the Social Security Disability Income information sheet, the announcement of the amended provision in the *Benefits Beacon*, and the LTD award letter sent to Plaintiff on January 15, 2004.

Plaintiff argues that the second factor—consideration of the appropriate regulations—indicates an abuse of discretion based on 29 C.F.R. § 2560.503-1. Section 2560.503-1 sets forth minimum requirements for plan procedures pertaining to claims for benefits. It provides that the claims procedures for a plan will be deemed reasonable only if they "do not contain any provision, and are not administered in a way, that unduly inhibits or hampers the initiation or processing of claims for benefits." 29 C.F.R. § 2560.503-1(a), (b)(3). This section also

10

provides that "the denial of a claim for failure to obtain a prior approval under circumstances that would make obtaining such prior approval impossible . . . would constitute a practice that unduly inhibits the initiation and processing of a claim." 29 C.F.R. § 2560.503-1 (b)(3). This regulation clearly only governs plan *claims procedures*, and Section 1.2(n) of the LTD Plan is not a claims procedure provision. The Court is aware of no case applying 29 C.F.R. § 2560.503-1 directly or by analogy to other types of plan provisions. In the absence of any other relevant regulations, factor two appears to be neutral.

The third factor requires the Court to consider the factual background of the determination and whether it provides any inferences of lack of good faith The fact that the administrator's construction of Section 1.2(n) requires claimants to secure SSDA benefits within eighteen months despite the fact that it may take more than eighteen months for the SSA to award benefits does not necessarily lead to the conclusion that the administrator acted in bad faith.[5] Plaintiffs may rightly quarrel with the wisdom of Section 1.2(n), but this does not mean that the Administrator's application of its terms was dishonest or done in bad faith. Furthermore, the fact that Defendant provides representation by Allsup, Inc. free of charge to claimants pursuing SSDI benefits is at least some indication of Defendant's efforts to assist employees in meeting the requirements of Section 1.2(n).

In conclusion, the Court finds that there are no genuine issues of material fact as to whether the administrator's interpretation of Section 1.2(n) was an abuse of discretion. The Court believes the administrator's decision was legally correct; even if the administrator's decision were not legally correct, however, the Court would find that the decision did not constitute an abuse of discretion.

---

[5] *See infra* at II.E (discussing average length of time for a claimant to move through the entire SSDI benefits appeals process and number of Lubrizol employees who have met the eighteen month cut-off).

### E.  Inherent ERISA Violation and Impossibility

Plaintiff argues that Section 1.2(n) may be considered arbitrary and capricious in and of itself because it is impossible to guarantee that a plan participant will receive approval from the SSA within eighteen months.

To show the impossibility or impracticability of meeting Section 1.2(n)'s eighteen month requirement, Plaintiff offers statements of then Social Security Commissioner Jo Anne B. Barnhart commenting on delays in processing of Social Security Disability applications. For example, in 2003, Commissioner Barnhart told the Subcommittee on Social Security of the House Committee on Ways and Means that "the length of time required to move through the entire appeals process was 1153 days – 525 days due to backlogged cases and 628 days to move through the process."[6] *Social Security Administration's Management of the Office of Hearings and Appeals, Hearing Before the Subcomm. on Social Security of the H. Comm. on Ways and Means*, 108th Cong. 1 (2003) (statement of Hon. Jo Anne B. Barnhart, Commissioner of Social Security). Plaintiff notes that Section 1.2(n), by contrast, only gives a participant approximately 540 days to obtain an award of SSDI benefits, and concludes that Commissioner Barnhart's testimony "evidences the impossibility of a participant in the LTD Plan at issue meeting the Plan's requirement to receive an award within . . . eighteen months." (Pl's Mot. Summ. Judg. 12.) Defendant counters, however, that fourteen Lubrizol employees have qualified for SSDI within 18 months, including seven who were employed in Lubrizol's Texas plants. (Tercek

---

[6] Plaintiff also provides testimony from Commissioner Barnhart that forty percent of SSDI claims were approved within three and a half months of initial application. *Statement by the Commissioner of Social Security on Fiscal Year 2004 Appropriations Requests, Hearing Before the H. Comm. on Appropriations, Subcomm. on Labor, Health, and Human Services, and Education, and Related Agencies*, 108th Cong. 2 (2003) (statement by Jo Anne B. Barnhart, Commissioner of Social Security). Defendant argues that the Court should strike this exhibit because Plaintiff only provided an unauthenticated internet copy. In her Reply brief, Plaintiff argues that the document is from a government source, and offers to provide the Court with an authenticated transcript of this document. The Court's holding in this case does not turn on this evidence, and as such, the Court will not decide whether this evidence is a self-authenticating official publication, FED. R. EV. 902, nor require Plaintiff to submit the authenticated, verified document.

Second Aff. ¶ 5.) Of the seven Texas employees, approval times ranged from approximately three to fifteen months after LTD approval, and six of the seven were approved in less than eight months. (*Id.* ¶ 6.) Plaintiff responds that even this evidence demonstrates that the eighteen month window is not very generous or forgiving.

Plaintiff argues that this impossibility or impracticability compels the conclusion that Defendant has breached a fiduciary duty and should excuse Ms. Hollis from complying with the provision. Plaintiff relies on *Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229*, 764 F.2d 147, 162-64 (3d Cir. 1985), which held that it was a breach of fiduciary duty for a plan trustee to incorporate an "escape clause" into an ERISA plan. Plaintiff also argues that ERISA plans may be interpreted in light of contract principles of impossibility.[7] Subsequent to *Northeast ILGWU Fund*, however, a number of circuits, including the Fifth Circuit, found that an employer does not act as a fiduciary when amending or setting the terms of an ERISA plan. *See, e.g., Izzarelli v. Rexene Products Co.*, 24 F.3d 1506, 1524 (5th Cir. 1994) ("[I]n general, an employer that decides to terminate, amend, or renegotiate a plan does not act as a fiduciary, and thus cannot violate its fiduciary duty, provided that the benefits reduced or eliminated are not accrued or vested at the time, and that the amendment does not otherwise violate ERISA or the express terms of the plan."). The Supreme Court confirmed this conclusion in *Hughes Aircraft Co. v. Jacobson*, explaining:

> Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. As we said with respect to the amendment of welfare benefit plans, [e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust.
> [....]

---

[7] Plaintiff additionally relies on the language regarding impossibility in 29 C.F.R. § 2560.503-1 (b)(3), but as the Court explained *supra*, that provision only applies to claims procedures.

> In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer' fiduciary duties which consist of such actions as the administration of the plan' assets. ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated.

525 U.S. 432, 444 (1999) (internal citations and quotation marks omitted); *see also In re Enron Corp. Securities, Derivative and ERISA Litigation*, 284 F. Supp. 2d 511, 671 n. 161 (S.D. Tex. 2003) ("[I]t is black letter law that ERISA's fiduciary standards do not apply when an employer amends an ERISA benefit plan."). Thus, in this case, Defendant could not breach a fiduciary duty by adopting an allegedly unreasonable amendment to the Plan because it was not acting as a fiduciary when it amended the Plan.

Undaunted, Plaintiff contends that the administrator can breach its fiduciary duties under 29 U.S.C. §1104 by forcing plan participants to meet the requirements of an "unreasonable, unrealistic, and impossible to abide by" plan provision after it is adopted. Section 1104 requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants . . . ." 29 U.S.C. § 1104 (a). Plaintiff cites no case in which a court has reached such a conclusion under section 1104. In fact, at least one district court has rejected such an argument, noting that "[o]nce an ERISA plan is created, the courts may not examine the reasonableness of provisions contained in the plan" even under § 1104. *Harlan v. Sohio Petroleum Co.*, 677 F. Supp. 1021, 1026-1027 (N. D. Cal. 1988). Given the principles set forth in *Hughes Aircraft*, the Court must agree. Furthermore, even if this argument were persuasive, it is not clear that Plaintiff could maintain a claim for breach of fiduciary duty while simultaneously asserting an ERISA claim for benefits. *See Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610 (5th Cir. 1998).

Plaintiffs' claim that the plan provision inherently violates ERISA therefore fails as a matter of law. The Court agrees that Section 1.2(n) is neither generous nor forgiving and realizes that Defendant may be aware that it is difficult (though clearly not impossible) to meet the eighteen month requirement. The Court understands Plaintiff's frustration with the fact that the cut-off date may not allow for the full amount of time that may be needed to pursue all appeals of a SSDI benefits determination. Indeed, under these circumstances, the Court agrees that the requirement seems unjust. Unfortunately, however, the Court is not aware of any precedent that would excuse Ms. Hollis from fulfilling the requirements of 1.2(n) on these grounds.

## III. ATTORNEYS' FEES

Defendant has counter-claimed for attorneys' fees. The Fifth Circuit has found that a Plan's entitlement to an award of attorneys' fees should be analyzed under the five-factor test set forth in *Iron Workers Local No. 272 v. Bowen*, 624 F.3d 1255, 1266 (5th Cir. 1980). *See* Wade, 493 F.3d at 542 n. 6 (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir.1992)). In exercising its discretion to award a Plan its attorneys' fees, the Court should consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position.

*Id.* After consideration of these factors, the Court determines that an award of attorneys' fees is not warranted. The Court will not, therefore, award attorneys' fees to the LTD Plan under Section 1132(g)(1) of ERISA. 29 U.S.C. § 1132(g)(1).

## IV. CONCLUSION

No disputed issue of material fact remains in this lawsuit. Defendant did not abuse its discretion in making its factual determination or in its interpretation of the relevant plan provision. Nor may Plaintiff prevail on her claim that the plan provision inherently violates ERISA. Defendant's Motion for Summary Judgment, Docket No. 11, is therefore **GRANTED**. Plaintiffs' Motion for Summary Judgment, Docket No. 12, is **DENIED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Defendant's counter-claim for attorneys' fees is **DENIED**.

**IT IS SO ORDERED.**
**SIGNED** this 14th day of February, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT